[No. 16493. *En Banc.* July 21, 1922.]

THE STATE OF WASHINGTON, *on the Relation of M. C. Clancy et al., Appellants,* v. COLUMBIA IRRIGATION DISTRICT OF STEVENS COUNTY *et al., Respondents and Cross-Appellants.*[1]

WATERS AND WATER COURSES (88)—IRRIGATION DISTRICTS—NATURE AND STATUS AS CORPORATION. An irrigation district, organized under Rem. Comp. Stat., §§ 6417 to 7543, is a municipal corporation in relation to its authorized contracts.

SAME (91)—IRRIGATION DISTRICTS—BONDS—NATURE OF OBLIGATION—STATUTES. Although Rem. Code, § 6432, creates a specific lien upon the property belonging to an irrigation district at the time its bonds are issued, and an individual holding situated within the boundaries of the district is not the property of the district, the bonds are general obligations of the district for which all the property in the district is subject to be assessed for payment of the entire obligation, in case delinquent assessments leave a deficiency; since the obligation was not severable and the act makes no provision for a segregation.

SAME (92)—ASSESSMENTS—PROPERTY LIABLE — DELINQUENT ASSESSMENTS—FORECLOSURE—LEVY OF TAX. Under Rem. Code, § 6432, providing that all the land within an irrigation district shall be subject to and remain liable for the payment of its obligations, lands acquired by a county upon a general tax foreclosure are subject to future assessments for the payment of bonds of the district, notwithstanding that the lien for general taxes is superior to the lien for special assessments previously levied; since to exempt such land (which continues to share in the benefits) would be to withdraw

[1]Reported in 208 Pac. 27.

it from the district without the approval of a majority vote, as re-
quired by Id., §§ 6475 to 6479, or the assent of the bondholders as
required by Id., §6480 (BRIDGES and FULLERTON, JJ., dissenting).

SAME (92). Lands sold to an irrigation district for unpaid as-
sessments are subject to future assessments to meet general obliga-
tions of the district, since the law (Rem. Comp. Stat., § 7440) re-
quires a levy sufficient to make up the delinquencies for the previous
year; so that the money will eventually be raised, if lands in the
district continue to pay assessments (BRIDGES and FULLERTON, JJ.,
dissenting).

SAME (92)—ASSESSMENTS—METHOD—WHAT LAW GOVERNS. The
law in force at the time of the levy and collection of taxes for the
payment of irrigation bonds should be followed if practicable, unless
it fails to give proper protection to the bondholder, in which event
the law in force at the time bonds were issued should apply.

SAME (92)—ASSESSMENTS—ENFORCEMENT OF LIEN—ADDITIONAL
SECURITY—STATUTES. Holders of irrigation bonds which are made
a specific lien against the property of an irrigation district are not
required to foreclose their lien before resorting to further assess-
ments against private property within the district; the provision
for a lien being only additional security intended as a last resort
in case of failure of the assessments to satisfy the obligation.

Cross-appeals from a judgment of the superior court
for Stevens county, Neal, J., entered December 30,
1920, upon findings in favor of the plaintiffs, in an ac-
tion for a writ of mandamus, after a trial to the court
on an agreed statement of facts. Modified.

*McCarthy, Edge & Lantz,* for appellants.

*Osee W. Noble* and *F. Leo Grinstead,* for respondents
and cross-appellants.

*The Attorney General, Fred J. Cunningham, Assist-
ant, Donworth, Todd & Higgins, Graves, Kizer &
Graves,* and *Lyman E. Latourette, amici curiae.*

HOVEY, J.—As all parties are appealing, we will con-
tinue to refer to them as plaintiffs and defendants,
respectively. The plaintiffs are the owners of bonds
issued by the defendant irrigation district, which is
situate in Stevens county, and of which county the

other defendants hold the several positions of commissioners and treasurer.

Columbia Irrigation District was organized some time prior to June 1, 1912, and issued bonds bearing that date in the total amount of $55,000. The law relating to a corporation of this class will be found in §§ 6416 to 6512, Rem. Code,[1] and the bonds were issued under the provisions of §§ 6430 to 6432-3 (P. C. §§ 3212, 3213, 3399-3401). This district differs from most irrigation districts in that a platted townsite comprises a large portion of its area. The district is several years in arrears in the payment of the interest on its bonds. Assessments have been levied by the directors of the district which have failed to produce sufficient money for this purpose. At the time of hearing, about fifty per cent of the land had been sold for general state and county taxes, and about eighteen per cent additional had been sold to the district for delinquent assessments, leaving less than thirty-two per cent in the names of individual holders.

The facts were stipulated and the issues resolve themselves into several questions of law which we are asked to determine. In addition to the briefs of the parties, there are presented four sets of briefs *amicus curiae*.

Among the conclusions of law made by the trial court are the following:

"1.    That plaintiffs are entitled to a peremptory writ of mandamus requiring the county commissioners of Stevens county, Washington, to levy an assessment on all the real property within the district, in an amount sufficient to pay current interest as well as the said delinquent interest and the interest accrued thereon, unless the said board of trustees of the said irrigation district shall make such levy within 30 days from the entry thereof, and on the first day of November of

[1] Rem. Comp. Stat., §§ 6417 to 7543.

each year hereafter unless the trustees shall have made such assessment according to law and at the time provided by law.

"2. That such levy against each piece of real property within said district shall be based upon the cash value thereof according to the valuation as fixed by the county assessor for purposes of general taxation for that year.

"3. That the land in said district previously sold to the said irrigation district for nonpayment of assessments shall be included in said levy and assessed as though owned by private individuals.

"4. That the land in said district bought by Stevens county on tax foreclosures shall be included in said levy and assessed as though owned by private individuals.

"5. That the lands in said district sold to said irrigation district for nonpayment of assessments or bought by Stevens county on tax foreclosures and subsequently sold to private individuals shall be included in said levy and assessed on the same basis as other property within the district for the purpose of paying off delinquent interest, paying current interest and principal of the bonds as the same mature.

"6. That any deficit in interest payment for any particular year, shall be considered, counted and added to the next annual interest and an assessment made on all the real property in said district sufficient to meet the same. . . .

"8. That if assessments levied against property owned by the district are not paid when due, then such property shall be sold the same as privately owned property, and this shall apply equally to property owned by the county.

"9. That in all matters affecting the levying of assessments by the said irrigation district, the sale of property defaulting in the payment of assessments so levied and the right of redemption from such sales, the payment of interest on the outstanding bonds and the payment of the principal thereof when they shall mature, the statutes in force at the time said bonds were authorized and issued shall govern as though such

statute was read into and made a part of each individual bond.''

And the judgment is as follows:

'' Wherefore, it is considered, ordered and adjudged by the court that a peremptory writ of mandamus issue out of this court under the seal thereof, commanding that upon receipt of said writ, the county commissioners of Stevens county, Washington, levy a tax in accordance with said findings of facts and conclusions of law, and in the manner to be, in said writ stated; and make known to this court within 30 days from the receipt of said writ, how they shall have executed the same, unless in the meantime, the board of trustees of the Columbia Irrigation District shall have levied said tax.''

The judgment is directed to the defendant county officers by virtue of the provisions of § 6437 (Rem. Code; P. C. § 3218), of the act.

The first and most important question to be disposed of is the character of the obligation created by the bonds. It is the contention of the defendant county officers that the liability for this obligation is a severable one, and that whenever a tract of ground is sold for a delinquent assessment or delinquent taxes it is relieved from any liability for further assessment because of the bond issue, and that the remaining lands within the district are not liable for any sums caused by delinquencies arising from failure to collect the assessments against the land so sold.

The status of an irrigation district as a municipal corporation has been passed upon in several cases, the conclusion in each case being the result of the controversy then before the court. In *Board of Directors Middle Kittitas Irr. Dist. v. Peterson*, 4 Wash. 147, 29 Pac. 995, it was held that an irrigation district is not a municipal corporation within the provision of our constitution relative to the debt limit of municipal

corporations. But in *Brown Brothers v. Columbia Irr. Dist.*, 82 Wash. 274, 144 Pac. 74, it was decided that an irrigation district is a municipal corporation within the terms of the statute relative to taking a bond for public work as required under §§ 1159-1161, Rem. 1915 Code (P. C. §§ 9724-9727). This was followed by *Peters v. Union Gap Irr. Dist.*, 98 Wash. 412, 167 Pac. 1085, where it was held that the irrigation district is a municipal corporation with such powers as are conferred upon it by statute. We think there can be no doubt that an irrigation district is a municipal corporation when it is considered in relation to its contracts made in the manner prescribed by law.

When it comes to the question of the character of its obligation as affecting the lands within its boundaries, an irrigation district differs from most other taxing districts. In the case of an ordinary municipal corporation, its obligations are general, and taxes are levied for their payment without any consideration of special benefit to the property affected. Neither is this question considered at the time the debt is created. In the case of local improvement districts, which are usually subdivisions of a municipal corporation, or in case of a municipal corporation like those covered by our drainage districts, the specific amount to be apportioned to each piece of property is determined at the time of the creation of the debt, and as each property satisfies the portion charged against it, the holders of the obligation must look to the remaining parcels for the balance due them.

In *Fallbrook Irrigation Dist. v. Bradley*, 164 U. S. 112, it is said that an irrigation district

"is created for a public purpose, and it rests in the discretion of the legislature when to create it, and with what powers to endow it. . . . the establishment

of its boundaries and the purposes for which the district is created, if it be finally organized by reason of the approving vote of the people, will almost necessarily be followed by and result in an assessment upon all the lands included within the boundaries of the district.    The legislature thus in substance provides for the creation not alone of a public corporation, but of a taxing district whose boundaries are fixed, not by the legislature, but, after a hearing, by the board of supervisors (in this case by a board of county commissioners), subject to the final approval by the people in an election called for that purpose."

The court then points out that the hearing on the question of apportionment and the valuation and assessment of the lands come later and at a different time, and at this time the property owner is given an opportunity to present objections thereto.    It is then for the first time that specific liens are created upon the lands within the district, and only for the sums then levied.

By § 6432, Rem. Code (P. C. § 3213), a specific lien is created upon the property belonging to the district for the payment of the bonds at the time they are issued, but the property belonging to individual holders, although situated within the boundaries of the district, is not the property of the district.

The provisions of the statute relative to bonds make it plain that they are the obligations of the district as a whole.    The language used in reference to them is fully as comprehensive as that relating to any of the general obligations of any of the other municipalities of the state.    The bonds themselves, a sample of which is an exhibit, recite that "Columbia Irrigation District, a public corporation duly organized and existing under and in pursuance of the Laws of the State of Washington, acknowledges itself to owe, and for value received hereby promises to pay to the bearer hereof."

As said in *Rialto Irr. Dist. v. Stowell,* 246 Fed. 294:

"They were required to contain, and did contain, an absolute promise to pay to the bearer of them certain sums of money at certain specified dates, with interest thereon at a certain specified rate, with appropriate interest and installment coupons annexed thereto. Neither on their face nor in the statute authorizing their issue is there any condition attached to their payment, nor, in our opinion, any provision in either from which any such condition can be implied. . . .

"We regard it as clear that the bonds here in question constitute a general obligation of the irrigation district to pay the principal and interest thereof as therein provided for, . . ."

And in *Norris v. Montezuma Valley Irr. Dist.,* 248 Fed. 369:

"In order to give to these statutes the construction contended for by defendants in error, it is necessary to read into them a provision that there shall be paid on the bonds only so much as the annual levy shall produce in money collected, whereas the statute is peremptory that the bonds and interest shall be paid, and the remaining provisions only indicate the source and mode of obtaining the fund. In order to give full force and effect to every portion of the statute there must not only be an assessment and levy, but the debt must be paid. A statutory obligation of a municipal corporation or quasi municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied to actually pay the debt. *East St. Louis v. Amy,* 120 U. S. 600, 7 Sup. Ct. 739, 30 L. Ed. 798; *Rialto Irr. Dist. v. Stowell,* 246 Fed. 294; *Boynton v. The District Township of Newton,* 34 Iowa 510.

"There is neither express nor implied prohibition of the making of a levy large enough to accomplish this purpose. The provision granting power to the

county board to estimate and fix the amount of the levy in no way undertakes to limit the amount of the levy they may make.''

That the obligation is a general one has been assumed by all courts which have had occasion to pass upon the question, either directly or indirectly, until the recent decision of *Interstate Trust Co. v. Montezuma Valley Irr. Dist.*, 66 Colo. 219, 181 Pac. 123. In that case the supreme court of Colorado decided that the property of one landowner could not be made liable for delinquencies arising from refusal to pay assessments on other lands, and that the delinquencies of one year could not be carried to the next year as against property which had paid its assessments previously incurred, and that the obligation is in fact a severable one. The opinion overlooks the fact that no attempt is made to segregate the obligation at the time it is created, and, in fact, there is no provision made in the acts for a segregation at any time. The acts, by their terms, bind the districts as a whole to pay their obligations, and, in our opinion, the decision of the Colorado court would defeat the purpose of the law, as money could not be secured to build irrigation projects with the very indefinite security which would thus be afforded.

It is our conclusion that the obligation is a general one, and that all lands within the district are subject to taxation for the payment of the entire obligation.

In addition to the question just considered, the appeal of the county presents five assignments of error:

First. Is property sold to Stevens county for delinquent general taxes subject to future assessments for payment of principal and interest on outstanding bonds? By statute, the lien of general taxes is made superior to the lien for special assessments, and we think there can be no doubt but that a sale for general

taxes will foreclose the lien of any assessment then levied against the land for irrigation district purposes. The legislature has, however, provided that all land within the district shall be subject to, and remain liable for, the payment of its obligations until fully paid (§ 6432; P. C. § 3213). Any land owned by the county within the boundaries of the district, unless set aside as provided in the act as not capable of being benefited by the proposed improvement, would receive its benefits and would be subject to assessment. *In re Howard Avenue North, Seattle*, 44 Wash. 62, 86 Pac. 1117, 120 Am. St. 973, 12 Ann. Cas. 417. We do not see how the fact that the county's title is acquired by tax foreclosure and subsequent to the organization of the district would make the status of the property any different than that which the county may have acquired from some other source, though the district assessments then in existence are foreclosed by the lien for general taxes. The general obligation of the district still exists and, so far as the debt is not reduced, it is still owing.

It is urged that the liability for general taxes is so superior that all other provisions of law must yield to it. Both liabilities are created by the same authority, viz: the legislature, and both laws should be given effect. To exempt this land would in effect withdraw it from the district and nullify the provision of § 6432 referred to. The only provision made for withdrawal is by application to the board of directors and approval of favorable action by that body by a majority vote of the electors of the district, §§ 6475 to 6479 (P. C. §§ 3257-3261), but § 6475 (P. C. § 3257), provides that this must not impair the obligation of the contracts of the district, and § 6480 (P. C. § 3262), requires an express assent of bondholders.

Further than this, the property owner is required to pay all assessments before redeeming, prior to issuance of a deed on a general tax sale. It should be noted in this connection that the receipt of water or other benefits conferred by the irrigation district is not dependent upon the payment of taxes. But all the land within the district continues to share in the benefits, even though assessments may be in default and the remedy of the district is limited to the sale of the land for nonpayment. We conclude that these lands are subject to future assessments.

Second. Is property sold to an irrigation district for unpaid assessments liable to future assessments? The chief argument against continuing to assess these lands is that such action would be futile. By the terms of the law, they are subject to future assessments. The landowner pays all assessments when he redeems, and valuable rights could be lost to the district through a failure to assess, and injustice occasioned owners who did pay. It is argued on behalf of certain bondholders that the inclusion of these lands will so apportion the amount to be raised as to produce an insufficient sum. The law requires the taxing officers to levy a sufficient sum to produce the amount needed and they will naturally make allowance for delinquencies, and the money will eventually be raised if there remain land in the district which continues to pay the assessments. For, as necessarily follows from what we have said, there should be added to the amount needed to pay interest and principal due in a current year a sufficient sum to cover the delinquencies of the previous year, and this is expressly provided for by § 6437 (P. C. § 3218), as amended by Laws of 1921, p. 448. [Rem. Comp. Stat., 7440.]

Third. Is each and every tract within the irrigation district liable for the payments of all the principal and

interest due on the outstanding bonds, or only liable for its pro rate share? What we have previously said disposes of this assignment.

Fourth. Must the laws in force at the time of the issuance and sale of bonds by the irrigation district relative to the method of levying and collecting taxes be followed where there is subsequent legislation changing the method? The question presented by this assignment relates to the valuing of the property for the purposes of taxation. At the time the bonds were issued, the law provided that the values should be those placed by the county assessor upon the property for state and county purposes. In 1915, the law was amended to provide for assessment according to benefits. We are unable to properly dispose of this assignment for the reason that we are not supplied with the facts pertinent to the issue. If the latter method fails to give proper protection to the bondholder, we are agreed that the law in force at the time the bonds were issued should apply. Cooley on Taxation (3d ed.), 1364; 12 C. J. 1013; 6 R. C. L. 345. We think that the law in force at the time the assessment was levied should be followed if practicable, and the judgment appealed from will be modified to require assessment under the present law, without prejudice to the right of any person interested to secure relief at the time of the going down of the remittitur, or at any subsequent time, upon showing that the latter method of assessment injuriously affects the security of obligations issued under a previous law.

Fifth. This assignment seeks to have it declared that the bondholders must first resort to the foreclosure of the lien given them by statute upon the property of the district before invoking the aid of the courts and having assessments made to pay their debts. In our opinion, this provision is only additional security and

the creditor is not required to avail himself of it. It was evidently intended by the legislature as a last resort in case of the failure of the land within the district to pay assessments in sufficient amount to satisfy the obligation.

The judgment appealed from is affirmed in all respects except for the modification indicated under the fourth assignment.

PARKER, C. J., MITCHELL, MAIN, HOLCOMB, and TOLMAN, JJ., concur.

BRIDGES, J. (dissenting)—I agree with the conclusion reached by the foregoing opinion that the bonds issued by the irrigating district were and are its general obligations. I cannot, however, agree that the lands within the district which have been sold to the county on account of general tax delinquencies may be assessed by the district while such lands are owned by the county.

Section 6438, Rem. Code (P. C. § 3219), being a part of the irrigation statute, expressly provides that the lien of the assessments to pay the bonds of the district shall be junior to the lien of the general taxes. Section 11267, Rem. Compiled Stat., provides that ". . . The said lien (of general taxes) shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real estate may become charged or liable." Section 11308, Rem. Compiled Stat., provides that "All property deeded to the county under the provisions of this act (with reference to foreclosure of delinquent tax certificates issued to the county) shall be stricken from the tax-rolls as county property and exempt from taxation and shall not be again assessed or taxed while the property of the county."

From these and other provisions of our statutes, it seems plain to me that it is the legislative intent that property which is sold to the county on account of delinquent taxes must not, while it is owned by the county, be charged with any assessments, taxes or liens whatever. The opinion holds, however, that these lands may be assessed by the irrigation district because the irrigation statute provides that all lands within the district shall be subject to assessment. This provision, in my opinion, means nothing more than that all lands within the district which are benefited and which, under the law, are legally assessable, must bear the burden of paying the principal and interest of outstanding bonds.

If assessments be made against these lands while owned by the county, what good will be accomplished? The county has no way of raising the money to pay the assessments. The result would be that every assessment made by the district would become delinquent and no monies could be collected and no benefit would be derived either by the district or the holder of the bonds. To permit the district to levy assessments against county property thus obtained would necessarily hinder and impede the county in the collection of its taxes and those for the state, and we ought not to so burden the county and state without express legislative sanction.

Nor am I able to agree with the view that lands sold to the district on account of delinquent assessments and still owned by it may be charged with future assessments to pay principal and interest on the bonds. Inasmuch as the bonds are general obligations of the district, there is no particular reason that I can see why lands owned by it should not be assessed, other than the one that such a proceeding would be useless.

The district has no possible way of raising money to pay any such assessments and the result would be that they would always become delinquent and, under the statute, the property would again be sold to the district, and thus no possible good could be accomplished. For these reasons I dissent.

FULLERTON, J., concurs with BRIDGES, J.