[No. 7849-3-III. Division Three. May 12, 1988.]

HOUSING AUTHORITY OF SUNNYSIDE, *Respondent,* v. SUNNYSIDE VALLEY IRRIGATION DISTRICT, *Appellant.*

*Patrick Andreotti* and *Flower & Andreotti,* for appellant.

*J. Eric Gustafson* and *Lyon, Beaulaurier,* for respondent.

McINTURFF, C.J.—Housing Authority of Sunnyside (SHA) obtained summary judgment on the issue of whether RCW 35.82.210 exempts property owned by SHA from assessments of Sunnyside Valley Irrigation District (SVID). Injunctive relief was ordered including refund of 10 years of assessments. We affirm.

SVID is an irrigation district formed in 1917 pursuant to RCW 87.03. SHA was formed and operated under RCW 35.82 and owns 12 parcels of land within the boundaries of SVID. SVID assessed SHA's property and SHA paid the assessments from 1974 to 1983; but, in 1984 SHA paid that year's assessment under protest. After SVID had begun foreclosure proceedings, SHA brought this action for declaratory and injunctive relief.

SVID operates and maintains the Sunnyside Canal, Sunnyside Dam and other water delivery works, delivering water to various landowners. SVID was not the first entity to have these responsibilities but has assumed, by contract, the rights and obligations of Sunnyside Water Users Association, now dissolved. Landowners who acquired their

water rights by contract with the United States had been required, as a condition of perfecting their water rights, to become members of that now dissolved association. Since SHA purchased the property in the SVID district, SHA has used its domestic water source for irrigation purposes and has not used SVID's water and facilities, nor does it intend to use SVID's water and facilities.

On summary judgment, the trial court ruled SHA was exempt from SVID's assessments under RCW 35.82.210 only so long as the real property is owned by SHA. It enjoined the assessment of SHA property and entered judgment (with interest) in favor of SHA for assessments paid during 1974 through 1984. The assessment for 1984 was $514.66.

The first issue is whether RCW 35.82.210 exempts property owned by SHA from SVID's assessments.

RCW 35.82.210 provides:

> Tax exemption and payments in lieu of taxes. *The property of an authority* is declared to be public property used for essential public and governmental purposes and such property and an authority *shall be exempt from all taxes* and *special assessments of the city, the county, the state or any political subdivision* thereof: *Provided, however,* That in lieu of such taxes an authority may agree to make payments to the city or the county or any such political subdivision for improvements, services and facilities furnished by such city, county or political subdivision for the benefit of a housing project, but in no event shall such payments exceed the amount last levied as the annual tax of such city, county or political subdivision upon the property included in said project prior to the time of its acquisition by the authority.

(Italics ours.) SHA argues SVID is a political subdivision referred to in RCW 35.82.210; therefore, this statute exempts SHA from the special irrigation assessments of SVID.

An irrigation district has been held to be a municipal corporation. *Haberman v. WPPSS,* 109 Wn.2d 107, 170–71, 744 P.2d 1032, 750 P.2d 254 (1987); *Roza Irrig.*

*Dist. v. State,* 80 Wn.2d 633, 640, 497 P.2d 166 (1972) (term "municipal corporation" used in its broad sense includes quasi–municipal corporations such as an irrigation district for purposes of public employee collective bargaining rights); *State ex rel. Clancy v. Columbia Irrig. Dist.,* 121 Wash. 79, 84, 208 P. 27 (1922).

The public policy of RCW 35.82 includes alleviating the shortage of safe and sanitary housing for low income persons. RCW 35.82.010. A tax exemption is consistent with this purpose. Further, RCW 35.82.210 specifically allows payment to a political subdivision where a housing authority is furnished with improvements, services, or facilities. In this case, however, SHA does not use the services of the irrigation district, nor has it in the past, but rather uses its own domestic water supply.

SVID contends RCW 35.82.210 does not exempt SHA from irrigation assessments and further, RCW 87.03.650, the statutory procedure to exclude property from the irrigation district, has not been followed.[1] It argues exclusion is not permitted where the district has outstanding bonds or contracts unless the bondholders file written consent to the exclusion. SVID argues the Legislature, in enacting RCW 35.82.210, could not have intended to exclude SHA from the SVID's assessments because it would impair SVID's ability to meet its obligations. SHA counters that an exemption is not equivalent to excluding the property

---

[1]RCW 87.03.650 provides that a petition may be filed to exclude land from an irrigation district. RCW 87.03.665 allows the board of directors to approve the petition to exclude property if they deem the exclusion to be in the best interests of the district "if there be no outstanding bonds of the district, and no contract between the district and the United States, or the state of Washington . . ." The failure to obtain effective consent from bondholders of an irrigation district is fatal to a proceeding to exclude certain land from the district. "Exclusion" from the district versus "exemption" from the assessments is not distinguished in the statute nor in any case found. However, in *Twisp v. Methow Vly. Irrig. Dist.,* 32 Wn. App. 132, 134, 646 P.2d 149 (1982) exclusion was described as removing "the land from the District . . .", adding support to the SHA's argument that its exemption from assessments under RCW 35.82.210 does not conflict with the exclusion provisions of RCW 87.03.650 because an exemption is not equivalent to an exclusion.

permanently from SVID's district because the exemption will continue only so long as the property is used for SHA purposes.

SVID argues *Clancy* controls. There the court held all land within an irrigation district shall be subject to and remain liable for the payment of its obligations including lands acquired by a county upon a general tax foreclosure while those lands were owned by the county. *Clancy* held these lands were subject to future assessments for the payment of bonds of the district since to exempt such land which continues to share in the benefits would be to withdraw it from the district without the assent of bondholders. *Clancy* thus equates exemption with withdrawal, contrary to SHA's argument that an exemption is temporary and thus is not equivalent to a permanent withdrawal.

We conclude *Clancy* is distinguishable for four reasons: (1) the case was decided in 1922, well before enactment of the statute exempting the SHA from assessments (RCW 35.82.210), (2) the court did not consider the situation where a specific exemption existed, as in this case, (3) there was no argument that the property did not benefit from the assessment; here SHA makes no use of the irrigation services provided by SVID, and (4) there was no stated public purpose furthered by exempting the property from assessments, such as the provision of low income housing.

After reviewing the relevant statutes and cases, we conclude RCW 35.82.210 exempts SHA from SVID's irrigation assessments. The conflict between RCW 35.82.210 and RCW 87.03.665 should be resolved to give the exemption under RCW 35.82.210 priority because it is the most recent enactment and specifically exempts SHA property from special assessments, which would include irrigation assessments. *Muije v. Department of Social & Health Servs.*, 97 Wn.2d 451, 453, 645 P.2d 1086 (1982) (held a specific statute prevails if there is a conflict with a general statute and the specific statute was passed subsequent to

the general statute). Here RCW 35.82.210 was enacted subsequent to RCW 87.03.665.[2]

The second issue is whether RCW 35.82.210 is unconstitutional because it impairs the obligations of contracts, or results in taking without compensation.

Both U.S. Const. art. 1, § 10, cl. 1, and Const. art. 1, § 23 forbid state impairment of the obligation of contracts. The fifth amendment to the United States Constitution prohibits taking private property for public use without just compensation, as does Const. art. 1, § 16 (amend. 9). A statute is presumed to be constitutional. In order to defeat a legislative enactment, the court must be persuaded it is unconstitutional beyond a reasonable doubt. *Ferndale v. Friberg,* 107 Wn.2d 602, 608, 732 P.2d 143 (1987).

### A
### IMPAIRMENT OF THE OBLIGATION OF CONTRACTS

SVID contends its authority to assess SHA land and SHA's obligation to pay the assessments arises from the contracts executed by SHA's predecessors in interest under which they acquired the appurtenant water rights owned by SHA. It argues each SHA parcel of land is subject to a contract imposing an obligation to pay SVID assessments. These contracts continue to apply and are enforceable. *Foster v. Sunnyside Vly. Irrig. Dist.,* 102 Wn.2d 395, 400, 687 P.2d 841 (1984). SVID argues if RCW 35.82.210 relieves the SHA from the obligation to pay SVID assessments, it is an unconstitutional impairment of contract in violation of the United States Constitution and Washington State Constitution.

*Foster,* at 400–01, held a 1915 contract between the predecessors in interest of SVID and the landowner ran with

---

[2]RCW 35.82.210 was first enacted by Laws of 1939, ch. 23, § 22, p. 73, and amended by Laws of 1965, ch. 7, § 35.82.210, p. 410. RCW 87.03.665 was first enacted by Laws of 1889, p. 700, § 64, amended by Laws of 1915, ch. 179, § 24, p. 630, adding the language "and no contract between the district and the United States" after "outstanding bonds of the district" and further amended by Laws of 1921, ch. 129, § 39, p. 477.

the land and was binding on the successors in interest such that SVID had the right to assess the land a minimum maintenance charge, assessable whether or not the land was actually irrigated. Landowners were not excused from performance because the land was no longer irrigable when subdivision by the landowner's predecessor in interest caused the land to be nonirrigable. *Foster,* at 410, found a statute which denied the landowners voting rights in SVID elections unconstitutional; however, it does not answer the question of whether a statutory exemption from the assessments unconstitutionally impairs the obligations of contract between the landowners and SVID or the bondholders of SVID.

■ In light of the similarity of language, cases construing the federal constitutional provision are to be used to construe the Washington constitutional provision. *Haberman v. WPPSS, supra* at 144–45; *Carlstrom v. State,* 103 Wn.2d 391, 394, 694 P.2d 1 (1985). The prohibition against impairment of contract obligations is not an absolute one; if the State impairs contracts between private parties, a court will look at the legislative enactment deferring to legislative judgment to determine if it was reasonably necessary. *Carlstrom,* at 394.

In determining whether a regulation violates the contracts clause, a court will determine if state law has operated to substantially impair a contractual relationship, measured by the degree of destruction of the contractual expectation. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 74 L. Ed. 2d 569, 103 S. Ct. 697 (1983). If so, the state must have a significant and legitimate public purpose for the regulation such as the remedying of a broad and general social or economic problem. *Energy Reserves Group, Inc.,* 459 U.S. at 411–12.

In *Macumber v. Shafer,* 96 Wn.2d 568, 572, 637 P.2d 645 (1981), retroactive application of an increased homestead exemption was not an unconstitutional impairment of contract because (1) the increase in the amount of the exemption was an exercise of sovereign power reserved in every

contract, and (2) the increase in the exemption did not impair the obligation but merely modified the remedy. An unsecured creditor could still seek a judgment against the debtor and the only change was that the amount available to the creditor was decreased by the additional exemption amount. *See also Moses Lk. Sch. Dist. 161 v. Big Bend Comm'ty College,* 81 Wn.2d 551, 557, 503 P.2d 86 (1972), *appeal dismissed,* 412 U.S. 934, 37 L. Ed. 2d 393, 93 S. Ct. 2776 (1973) (no unconstitutional impairment of contract occurred when a state transferred public property from one public agency to another without providing either compensation or adjustment of liabilities; property owners have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers).

Here the exemption of housing authority property is for the statutorily stated public purpose to alleviate the shortage of safe and sanitary housing for low income persons. RCW 35.82.010. Thus, even if exemption of SHA lands from the SVID's tax base can be said to substantially impair the contract relationship between the SVID and property owners or bondholders, the exemption serves a significant and legitimate public purpose. Therefore, we hold the exemption does not violate either the federal or Washington constitutional prohibitions against impairment of contracts.

## B
### A TAKING OF PRIVATE PROPERTY

█ In regard to the taking of private property, *Moses Lake,* at 557 held a state may, "at its pleasure," modify or withdraw the powers of a subdivision of a state, may take without compensation such property, hold it in itself, or vest it in other agencies and no unconstitutional taking will result.[3] General obligation bonds had been used to purchase school district property which the Legislature then transferred to a community college district. *Moses Lake,* at

---

[3]*See also Jersey City v. Martin,* 126 N.J.L. 353, 19 A.2d 40 (1941) (contract clauses and due process clauses of the United States Constitution do not restrict a

553.[4] SVID argues it is not a public agency but owns and operates district property for the benefit of landowners with appurtenant water rights within the district; thus, its right to levy assessments is a private right. *State v. Human Relations Research Found.,* 64 Wn.2d 262, 391 P.2d 513 (1964); *In re Horse Heaven Irrig. Dist.,* 11 Wn.2d 218, 118 P.2d 972 (1941). It therefore asserts *Moses Lake* is inapplicable since in that case the property was created solely for general public purposes.

State owned properties have customarily been immune from special assessments by local governments. 2 C. Antieau, *Municipal Corporation Law* § 19A.11 (rev. ed. 1988). An assessment by a local government for local improvements upon lands owned by the State cannot be made without legislative authority. *State v. Olympia,* 171 Wash. 594, 595, 18 P.2d 848, 23 P.2d 1118 (1933). Where state properties have been held immune from special assessments, it is not considered unconstitutional to cast the additional burden on the other landholders in the area. 2 C. Antieau § 14.25, at 14–53; *Union Title Ins. & Trust Co. v. Thorp,* 94 Cal. App. 2d 421, 210 P.2d 905 (1949).

Farmland classified as open space and agricultural land exempt from property taxes was also exempt under a statute for special benefit assessments for local improvements. *Ferndale v. Friberg, supra* at 603–04. This exemption was upheld under constitutional challenge that it was a taking without just compensation. The exempt farmland received

---

state's authority over the rights and property of its municipalities); *Orleans Parish Sch. Bd. v. New Orleans,* 56 So. 2d 280, 284 (La. Ct. App. 1952) (school property is possessed solely for public use and may be transferred between one agency and another without federal constitutional restraint).

[4]The court noted a possible exception to the rule when a municipal corporation holds property in a private capacity. *Moses Lake,* at 557. *See also Hunter v. Pittsburgh,* 207 U.S. 161, 178–79, 52 L. Ed. 151, 28 S. Ct. 40, 47 (1907) (distinguished property held and used for governmental purposes from property held in a private capacity, *i.e.,* for the same purposes private corporations or individuals hold property. The Court suggested, but did not hold, that the distinction may limit state power to take such property without compensation).

no benefit from the water district and thus any transfer of liability to those receiving benefits would be a rational allocation of assessments. *Ferndale,* at 608–09.[5]

*Moses Lake* and *Ferndale* persuade us that exempting SHA land, which does not benefit from SVID assessments, does not result in a taking. SVID is a municipal corporation; thus, the general rule that no taking results from legislative reallocation of property among political subdivisions applies. Cases stating that an irrigation district holds property in a proprietary capacity, exercising no governmental functions, are support for an as yet unrecognized exception to the unconstitutional taking rules enunciated by *Moses Lake.* However, neither case deals with whether *exempting* land, only so long as it is used for low–cost housing, as opposed to permanently *excluding* the land from assessment, would result in taking. Further, *Human Relations Research Found.* involved a condemnation statute which specifically required payment by the Department of Highways to the irrigation district, unlike this case where the challenged statute provides exemption.

Finally, SVID argues federal cases are precedent on the taking issue. *Adaman Mut. Water Co. v. United States,* 278 F.2d 842 (9th Cir. 1960). *Adaman* was cited as authority by *Human Relations Research Found.,* at 266. As SHA contends, *Adaman* involved condemnation by the United States government of land within a private irrigation district. *Adaman,* at 844. SHA also argues, and we agree, *Adaman* is not persuasive guidance for a state's reallocation of property among its subdivisions. Rather it stands for the proposition that the federal government may not take private property without compensation.

---

[5]Distinguishing factors between SVID assessments and *Ferndale* are that the exemption in *Ferndale* took place before construction of the improvements and before investment by bondholders. These distinctions make *Ferndale* less persuasive as guidance in this case.

We hold there was no taking of private property without just compensation under either the Washington or federal constitutions.

The judgment of the Superior Court which granted summary judgment for SHA is affirmed.

MUNSON and THOMPSON, JJ., concur.

Review granted by Supreme Court October 4, 1988.