[No. 55305–0.   En Banc.   April 6, 1989.]

HOUSING AUTHORITY OF SUNNYSIDE, *Respondent,* v.
SUNNYSIDE VALLEY IRRIGATION DISTRICT,
*Petitioner.*

*Flower & Andreotti, Charles C. Flower,* and *Patrick Andreotti,* for petitioner.

*Lyon, Beaulaurier, Weigand, Suko & Gustafson* and *J. Eric Gustafson,* for respondent.

DURHAM, J.—The Housing Authority of Sunnyside, Washington (SHA) contends that RCW 35.82.210 exempts it from having to pay special assessments levied by its local irrigation district. We conclude, however, that the Legislature could not have so intended in these circumstances.

SHA first purchased property within the boundaries of the Sunnyside Valley Irrigation District (SVID) in 1974. SHA currently owns 12 parcels of property within the district, which carry appurtenant water rights that were created by contracts between the previous owners of SHA's properties and SVID's predecessors in interest. Under these contracts, SVID is obligated to maintain and operate the Sunnyside Canal and other water delivery works in order to provide water to landowners within the district, and SHA is obligated to pay special assessments levied to support the irrigation system.

Until 1984, SHA paid irrigation assessments on these parcels of land, even though it did not use water from that source.[1] The assessments totaled approximately $100 in 1974 and increased each year through 1984 when they amounted to approximately $500. The total assessments paid between 1974 and 1984 were over $2,500.

SHA initially refused to pay the 1984 assessments, basing its refusal on RCW 35.82.210, which exempts housing authorities from having to pay special assessments to political subdivisions of the state. When SVID commenced foreclosure proceedings, SHA paid the 1984 assessments under protest and filed the instant suit.

---

[1]Property in an irrigation district is subject to assessment even though the property owner does not use the district's water, as long as the land is irrigable and the water is available for its use. *Otis Orchards Co. v. Otis Orchards Irrig. Dist. 1,* 124 Wash. 510, 215 P. 23 (1923).

SHA's complaint sought a determination that its property was not subject to assessment and asked for reimbursement of the assessments it had paid to SVID since 1974. The trial court concluded that RCW 35.82.210 exempted SHA from the assessment obligation and granted summary judgment to SHA. The Court of Appeals affirmed this judgment, holding, in addition, that the statutory exemption for housing authority property did not unconstitutionally impair contracts and did not constitute a "taking" without compensation. *Housing Auth. v. Sunnyside Vly. Irrig. Dist.*, 51 Wn. App. 387, 753 P.2d 1005 (1988). We granted review.

RCW 35.82.210 exempts housing authorities from special assessments that are imposed by political subdivisions of the state:

> The property of an authority is declared to be public property used for essential public and governmental purposes and such property and *an authority shall be exempt from all taxes and special assessments of the city, the county, the state or any political subdivision thereof: Provided, however,* That in lieu of such taxes an authority may agree to make payments to the city or the county or any such political subdivision for improvements, services and facilities furnished by such city, county or political subdivision for the benefit of a housing project, but in no event shall such payments exceed the amount last levied as the annual tax of such city, county or political subdivision upon the property included in said project prior to the time of its acquisition by the authority.

(Italics ours.) RCW 35.82.210.[2]

The key terms of this provision are all met in the instant case. SHA is "an authority". *See* RCW 35.82.020(1), .030. Neither party challenges the Court of Appeals conclusion that an irrigation assessment is a "special assessment". *See Sunnyside*, at 389–90. Finally, under the following

---

[2]Because SHA obtains its water from its own sources rather than SVID's, the proviso in this statute is inapplicable.

analysis, SVID qualifies as a "political subdivision" of the state: irrigation districts qualify as municipal corporations, at least in the broad sense of the term, see *Haberman v. WPPSS,* 109 Wn.2d 107, 170–71, 744 P.2d 1032, 750 P.2d 254 (1987); *Roza Irrig. Dist. v. State,* 80 Wn.2d 633, 637–40, 497 P.2d 166 (1972), and municipal corporations are political subdivisions of the state. *King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.,* 87 Wn.2d 536, 540, 554 P.2d 1060 (1976); *Board Against Discrimination v. Board of Directors,* 68 Wn.2d 262, 269, 412 P.2d 769 (1966). Accordingly, there is little doubt that RCW 35.82.210, standing by itself, would exempt SHA from its obligations to pay assessments to SVID.

SVID argues, however, that our analysis must also take into consideration Washington's statutes concerning the operation of irrigation districts. Generally, RCW 87.03 empowers irrigation districts to assess the lands within their boundaries in order to pay the district's bond and contractual obligations and to pay for the district's maintenance and upkeep. RCW 87.03.215, 87.03.240, 87.03.260. Under RCW 87.03.215, the duty of assessment attaches to all property within the district unless that property is "excluded" from a district by virtue of certain statutory procedures. RCW 87.03.645–.695.[3] Under these procedures, a petition seeking exclusion must be submitted to the district's board of directors and a hearing must be held. RCW 87.03.660. If the district has bonds outstanding or has contractual obligations to a federal agency or the state, then the land cannot be excluded without the assent of these other entities. RCW 87.03.670. Additionally, if any person interested in the district files a written objection showing cause why the land should not be excluded, then the land

---

[3]RCW 87.03 creates other exceptions, as well, but none that are relevant to the present case. *See, e.g.,* RCW 87.03.242 (exempting agricultural lands from special benefit assessments); RCW 87.03.750–.770 (excluding nonirrigable land when the State holds all outstanding bonds).

cannot be excluded unless an election is held and a majority of the votes cast by the district's property owners favor the exclusion. RCW 87.03.675, 87.03.680.[4]

SVID contends that the exemption for housing authorities conflicts with the procedures discussed above for excluding land from an irrigation district. According to SVID, an exemption in this case would have the same effect as excluding the land from the district, yet the statutory procedures for doing so were not followed.

A court should attempt "to reconcile apparently conflicting statutes . . . if this can be achieved without distortion of the language used." *Tommy P. v. Board of Cy. Comm'rs*, 97 Wn.2d 385, 391–92, 645 P.2d 697 (1982). SHA argues that these statutes can be reconciled because an exemption is different from an exclusion, in that the exemption lasts only as long as SHA uses the land for public purposes, while an exclusion is a permanent action. Therefore, under SHA's theory, the exclusion statutes are not triggered by the exemption for housing authorities, and the statutes do not conflict. This argument, however, was rejected for the most part in *State ex rel. Clancy v. Columbia Irrig. Dist.*, 121 Wash. 79, 88, 208 P. 27 (1922), where this court stated that granting exemptions from irrigation assessment obligations would in effect nullify the provisions of the exclusion statutes. Moreover, although SHA characterizes its exemption as "temporary", lasting only so long as it uses the properties for public housing, the exemption is of a more permanent nature in that SHA has built public housing on these properties. Under these facts, the housing statute cannot be reconciled with the exclusion statutes.

■ Whenever two statutes irreconcilably conflict, a court must determine which statute the Legislature intended to prevail. *See Rose v. Erickson*, 106 Wn.2d 420,

---

[4]Although the statutes are phrased that the board "may" order an election if it receives a written objection, *see* RCW 87.03.675, the statutes do not provide any other manner in which the board may exclude the land than by holding the election described above.

424, 721 P.2d 969 (1986). As has been stated in a related context, the ultimate goal in construing ambiguous statutes is to give effect to the Legislature's intent. *See Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986).

The Court of Appeals resolved this issue by relying on the rule of statutory interpretation that the Legislature usually intends a specific statute to prevail over a more general statute, especially where the specific statute is more recently adopted. *Sunnyside*, at 391–92 (citing *Muije v. Department of Social & Health Servs.*, 97 Wn.2d 451, 453, 645 P.2d 1086 (1982)). We do not agree that the specific/general rule of statutory interpretation applies in this case. The housing statute is more specific than the exclusion statutes in the sense that its provisions relate only to the property of housing authorities, while the exclusion statutes apply to all property in the district. However, the exclusion statutes are more specific in the sense that they apply only in the context of irrigation districts, while the housing statute applies to all assessments and taxes imposed by any number of local and statewide governmental and quasi-governmental bodies. Thus, we cannot say that either is necessarily more specific than the other.

▮ Our attempt to discern legislative intent takes a different approach based upon a careful reading of the statutes themselves. We find it difficult to believe that the Legislature would have intended the housing statute to be applied at the expense of the protections so meticulously provided for in the exclusion statutes. The exclusion statutes state that land cannot be excluded without the approval of the holders of outstanding bonds issued by the district. RCW 87.03.670. The statutes extend similar veto powers to the governments of the state of Washington and the United States if the governments have contracts with the district. RCW 87.03.670.

Moreover, the exclusion statutes also extend protections to those who would bear the burden of paying the assessments that would otherwise have been charged against the

excluded land: the other property owners in the district. *See State ex rel. Clancy v. Columbia Irrig. Dist., supra* at 84–87. If any property owner objects in writing and shows cause why a proposed exclusion should be denied, then the statutes provide only one way in which the land can be excluded: an election must be held and a majority of the votes cast by the district's property owners must approve the exclusion. RCW 87.03.675–.680.

These protections are as important as they are detailed. The financing of irrigation districts, so vital to the agricultural economy of the eastern portions of our state, could be greatly upset by a gradual whittling away of its real property base. Given the nature of these interests, we conclude that the Legislature could not have intended that the housing statute be given priority over the exclusion statutes. No doubt the Legislature also considered the purpose behind the housing statute to be important. *See* RCW 35.82.010. Nevertheless, this interest is protected in that the housing exemption should be applicable in contexts other than irrigation assessments.[5]

In view of our holding, we need not reach SVID's arguments that giving effect to the housing statute would unconstitutionally impair contracts and constitute a "taking" without compensation.

The trial court's summary judgment in favor of SHA is reversed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, PEARSON, ANDERSEN, and SMITH, JJ., concur.

---

[5]We emphasize that the holding in this case is limited to the statutes currently at issue. As indicated above, we are aware of no reason why RCW 35.82.210 should not be applied in other contexts. Additionally, the irrigation statutes do not necessarily preclude the operation of other exemptions. For example, RCW 84.34.300–.380 create an exemption for farm and agricultural land from special *benefit assessments.* The irrigation statutes explicitly refer to this exemption, *see* RCW 87.03.242, implying strongly that the Legislature specifically intended this exemption to apply to irrigation assessments and to supersede the exclusion provisions. Of course, we have no similar indication of legislative intent in the present case.

Dore, J. (dissenting)—I dissent.

The majority's conclusion that the interests of the irrigation district must prevail over those of the housing authority is purely arbitrary. Of the two reasons the majority gives for its decision, one proves too much and the other misapplies a rule of statutory construction which it elsewhere disavows as unworkable. Once our general rules of statutory construction are correctly applied, it becomes clear that the housing authority is entitled to a general exemption from irrigation district assessments. That general exception is neither a taking nor an impairment of contract. Therefore, I would affirm the Court of Appeals.

### THE HOUSING AUTHORITY IS EXEMPT FROM IRRIGATION DISTRICT ASSESSMENTS

The majority concludes that the housing authority's exemption, RCW 35.82.210, does not supersede the irrigation district assessment statute, RCW 87.03. According to the majority, the housing authority exemption does not have the "meticulously" drawn exclusionary procedures of the irrigation district statute. *See* RCW 87.03.645–.695. According to the majority, recognizing the housing authority exemption would result in a greater burden on the remaining property holders in the irrigation district and would represent a "whittling away" of the irrigation district's tax base. If the majority is correct, however, then virtually all public property is subject to irrigation district assessments.

Consider the implications of the majority's reasoning when applied to the following statute:

Public property exempt. All property belonging exclusively to the United States, the state, any county or municipal corporation, and all property under a recorded agreement granting immediate possession and use to said public bodies or under an order of immediate possession and use pursuant to RCW 8.04.090, shall be exempt from taxation. All property belonging exclusively to a foreign national government shall be exempt from taxation if such property is used exclusively as an office or residence

for a consul or other official representative of such foreign national government, and if the consul or other official representative is a citizen of such foreign nation.

RCW 84.36.010. Like the housing authority exemption, this exemption does not have "the protections so meticulously provided for in the exclusion statutes." Majority, at 267. Like the housing authority exemption, it would result in a greater burden on the remaining property holders in the irrigation district. Like the housing authority exemption, this exemption might represent a "whittling away" of the irrigation district's tax base. Yet it is impossible to imagine that the Legislature intended the irrigation district's assessment statute to take priority over RCW 84.36.010's exemption for public property.

What this demonstrates is that the majority's argument proves too much. The housing authority's exemption is indistinguishable from any other property tax exemption. If the majority is correct, the irrigation district's rights take precedence over exemptions which the Legislature has provided for the property of: cemeteries, churches, parsonages and convents (RCW 84.36.020); benevolent, protective or rehabilitative social services, veterans' organizations and nonprofit student loan organizations (RCW 84.36.030); nonprofit religious organizations (RCW 84.36.032); schools and colleges (RCW 84.36.050); art, scientific and historical collections (museums), associations engaged in the production of musical, dance and other artistic works, volunteer fire departments and humane societies (RCW 84.36.060); airports (RCW 84.36.130); day–care centers, libraries, orphanages, nursing homes, hospitals and outpatient dialysis centers (RCW 84.36.040); nonprofit organizations providing shelter to homeless persons (RCW 84.36.043); nonprofit organizations involved in medical research or medical training (RCW 84.36.045); nonprofit organizations involved in procuring and processing blood plasma and products (RCW 84.36.035); public assembly halls and meeting places (RCW 84.36.037); nonprofit organizations involved in the transmission or reception of government

radio and television (RCW 84.36.047); housing finance commission (RCW 84.36.135); public right of way easements (RCW 84.36.210); interstate bridges (RCW 84.36-.230); soil and water conservation districts (RCW 84-.36.240); water distribution cooperatives (RCW 84.36.250); conservation and scientific research organizations (RCW 84.36.260); and sheltered workshops for the handicapped (RCW 84.36.350).

While the majority is correct in noting that we are concerned only with the two parties before us, the absence of any logical limits to its argument exposes the absence of any principle in its decision. The majority argues that the irrigation district's interests are vital to the agricultural economy of the state and that: "Given the nature of these interests, we conclude that the Legislature could not have intended that the housing statute be given priority over the [irrigation district] exclusion statutes". Majority, at 268. The majority gives no reasons for that conclusion, however. Are the interests of the irrigation district more important than the interests of schools, churches and museums? Are they more important than the interests of airports, libraries and orphanages? Are they more important than the interests of hospitals, fire departments and homeless shelters? I do not know, and the majority apparently does not either. Its placing the interests of the irrigation district over those of the housing authority is arbitrary and capricious.

We need not make such a bare policy determination. In deciding that the housing authority's tax exemption takes precedence over the irrigation district's exclusion procedures, the Court of Appeals applied the general rule of statutory construction that, where two statutes appear to conflict, the specific should take priority over the general. The majority purports to reject this approach, arguing that rule is indeterminate: the housing authority exemption is more specific in that it applies to only housing authority property, but is more general in that it exempts such property from all property taxes. Majority, at 267.

Ironically, however, the majority then proceeds to apply the specific/general rule in support of its own conclusion:

> We find it difficult to believe that the Legislature would have intended the housing statute to be applied at the expense of the protections so meticulously provided for in the exclusion statutes.

Majority, at 267. In other words, the procedural requirements of the irrigation district exclusion statutes are more specific than the general command of the housing authority exemption, so the former controls the latter.

In both these arguments, the majority misconstrues the specific/general rule. In disavowing the rule, the majority first interprets it to mean specific or general with regard to the subject matter of the statute. In its argument based on the rule, the majority interprets it to mean specific or general with regard to structure. Neither of these two interpretations of the rule is correct, however. Correctly applied, the rule leads to a conclusion opposite from the majority's.

The object of statutory interpretation is to give effect to the intent of the Legislature. The rule that the specific controls over the general is only a particular application of that general rule. Therefore, in applying the specific/general rule to reconcile two apparently conflicting statutes, we should look to the Legislative purpose or object which the two statutes in question share. By giving precedence to the more specific expression of intent, we are more likely to give effect to the true intent of the Legislature. In this case, the housing authority exemption, RCW 35.82.210—*not* the irrigation district exclusion process, RCW 87.03.645–.695— is the more specific expression of legislative intent.

The purpose or object which both statutes share is to give relief from property tax assessments where it is necessary or appropriate. In the irrigation district statute, the Legislature left this determination up to the district's directors and to the district's property owners. Thus, it would be up to those parties, following the procedures contained in RCW 87.03.645–.695, to weigh the interests of schools, churches, museums and so on against the needs of

the irrigation district, and to exclude those properties from irrigation district assessments as appropriate.

In the case of the housing authority exemption, however, the Legislature has made a specific determination that, where public housing is concerned, relief from property taxation is *always* appropriate. It has therefore removed this question from the general power to grant that relief which the irrigation district exercises through RCW 87.03-.645–.695. Since we are bound to give effect to the purposes of the Legislature, we must heed this specific determination, rather than leaving the matter to the general discretion to grant relief which the irrigation district would otherwise exercise.

The exemption for housing authorities contained in RCW 35.82.210 is like the exemptions of RCW 84.36 in this respect. The Legislature has made a determination that in certain cases an exemption from property taxes is always necessary or appropriate. Instead of giving taxing authorities discretion to make exemptions as they see fit, the Legislature has stated specifically that an exemption *definitely* is needed in the case of churches, in the case of schools, in the case of museums and so on. The exemptions of RCW 84.36, then, will always prevail over the irrigation district's assessments. The Legislature has removed those cases from the general discretion to give relief from taxation which RCW 87.03.645–.695 represents.

This interpretation is borne out by the chronological order in which these two statutes were passed. The basic irrigation district assessment statute was passed in Laws of 1889, p. 671, see Reviser's note before RCW 87.03.005, and amended in 1915 and 1921. At that point in time, the Legislature recognized that, as a general matter, relief from the assessments would sometimes be necessary or appropriate, but it was content to leave the matter to the discretion of the district itself. When the Housing Authorities Law was passed in Laws of 1939, ch. 23, § 1, and amended in Laws of 1965, the Legislature had the option of leaving the question of relief from assessments to the discretion of the irrigation

district, since the procedures of RCW 87.03.645–.695 were already in place. It chose not to do so. Instead, the Legislature made a determination that housing authorities definitely were entitled to relief from property taxes and assessments. The question was removed from the discretion of the irrigation district and explicitly resolved in the housing authority statute itself. RCW 35.82.210. This specific determination that exemption from assessments is appropriate in the case of housing authorities must prevail over the general grant of discretion to exclude contained in RCW 87.03.645–.695. Therefore, the housing authority is exempt from irrigation district assessments.

Since the housing authority's exemption must meet constitutional requirements, two issues remain: whether the exemption impairs contract rights and whether the exemption constitutes a taking.

### THERE IS NO IMPAIRMENT OF CONTRACT

Both the federal and state constitutions prohibit impairment of contract. U.S. Const. art. 1, § 10; Const. art. 1, § 23. The two provisions are governed by the same standard. *Haberman v. WPPSS*, 109 Wn.2d 107, 144–45, 744 P.2d 1032, 750 P.2d 254 (1987). Impairments of contract are evaluated under a 3–part test. The first question is whether the impairment is substantial. If it is, then two conditions must be met: the State must have a significant and legitimate public purpose behind its legislation and the change in the rights of the parties must be reasonable in relation to the public purpose. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12, 74 L. Ed. 2d 569, 103 S. Ct. 697 (1983); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22, 52 L. Ed. 2d 92, 97 S. Ct. 1505 (1977).

The housing authority acquired its land subject to covenants requiring the payment of the irrigation district assessments. The exemption provided in RCW 35.82.210 relieves the housing authority of any obligation under this covenant. There is no doubt that this constitutes a substantial impairment of contract. The question is whether

the impairment can be justified under the second and third steps of the governing standard.

There can be no doubt that the housing authority exemption was granted for a public purpose. The authority exists to provide safe and sanitary housing to the under-privileged. The exemption of RCW 35.82.210 is an integral part of its mission. There is no suggestion anywhere in the public record or in the record of this case that the exemption was granted to benefit private interests. *See Energy Reserves,* at 412.

The only remaining question is whether the tax exemption is reasonable in relation to the public purpose. It seems self–evident that it is. The purpose of the housing authority is to provide low–cost housing. To achieve that goal, it is reasonable of the Legislature to attempt to minimize the costs incurred by the authority. Property taxes are a substantial burden in any undertaking of this kind, and it is entirely reasonable for the Legislature to relieve the authority of that burden as a way of enabling it to perform its public function.

Since the Legislature had a legitimate public purpose and chose reasonable means to pursue it, the impairment of contract resulting from RCW 35.82.210 meets constitutional requirements.

### THERE IS NO TAKING

The next question is whether the Legislature has taken property without due compensation. There has been no taking because RCW 35.82.210 does not affect a property right of the district to begin with.

We have previously held that, where the State condemns land within an irrigation district, the district has a compensable property interest under the state and federal constitutions.

> "We think that the duty to pay assessments in the instant case is an equitable servitude or restrictive covenant binding upon any once–cultivated segment of Project land serviced by appellant. Appellant has lost the

benefit derived from this servitude, and the loss is compensable, for the Government has destroyed an intangible right directly connected with the physical substance of the land condemned."

*State v. Human Relations Research Found.*, 64 Wn.2d 262, 267, 391 P.2d 513 (1964) (quoting *Adaman Mut. Water Co. v. United States*, 278 F.2d 842, 846 (9th Cir. 1960)). The court acknowledged that a reduction in the taxing power alone would not constitute a taking of property. *Human Relations*, at 266. However, the court avoided that rule by treating district assessments as a property right, for the enforcement of which the State has lent its taxing power.

The fact that the right to levy assessments in the instant case is lodged in a semipublic body makes no difference; the statute simply lends the machinery for tax collection to enforce the inherent duty impressed upon the land by the equitable servitudes and restrictive covenants necessary to accomplish the purposes for which the district was formed. . . . to collect the pro rata share of construction, operation, and maintenance costs against the land involved.

*Human Relations*, at 267. The irrigation district naturally finds *Human Relations* dispositive. It is not.

*Human Relations* is distinguishable from the present case because no land has been condemned. Only the taxing power has been withdrawn. In the passage quoted just above, *Human Relations* recognized a distinction between the equitable servitude on the property and the taxing power of the State. The statute authorizing irrigation district assessments "lends the machinery for tax collection to enforce the inherent duty impressed upon the land by the equitable servitudes . . ." *Human Relations*, at 267. In *Human Relations*, the condemnation of the land destroyed the equitable servitudes. In this case, in contrast, the exemption provided for in RCW 35.82.210 withdraws the "loan" of the taxing power. That taxing power is not a property right, and its withdrawal is not a taking.

Of course, when the right to assess cannot be distinguished from the taxing power, the interest lost is noncompensable . . .

*Human Relations,* at 266.

Furthermore, it is questionable whether *Human Relations* is still good law. In *Moses Lk. Sch. Dist. 161 v. Big Bend Comm'ty College,* 81 Wn.2d 551, 503 P.2d 86, *appeal dismissed,* 412 U.S. 934 (1972), we held that a transfer of real property from a school district to a newly created community college district was not a compensable taking. Both entities were merely subdivisions of the State, and transfers of property between subdivisions is not a taking. The basis of our decision in *Moses Lake* was *Hunter v. Pittsburgh,* 207 U.S. 161, 52 L. Ed. 151, 28 S. Ct. 40 (1907). *Hunter's* holding is broad: property rights held by political subdivisions of the State simply are not compensable property rights under the takings clause.

Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. . . . In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence of the corporation or its powers . . .

*Hunter,* at 178–79.

*Moses Lake* suggested a distinction between property held in a proprietary versus a governmental capacity, which might reconcile it with *Human Relations. Moses Lake,* at

557. Arguably, the school district land in *Moses Lake* was held in a governmental capacity, and the equitable servitudes held by the irrigation district in *Human Relations* were held in a proprietary capacity. However, *Hunter* did not recognize such a distinction. *Hunter* concerned the consolidation of Allegheny, Pennsylvania, into Pittsburgh; that is, the destruction of property rights held in proprietary *and* governmental capacities.

Given the scope of the holding in *Hunter,* it seems that *Human Relations* was wrongly decided. Even if the district's right to levy assessments is a property right, it is no different from any other property right held by subdivisions of the State. Under *Hunter,* those rights are held at the pleasure of the Legislature. They are not compensable under the takings clause of either the state or federal constitution.

CONCLUSION

I would affirm the Court of Appeals. The exemption of RCW 35.82.210 takes precedence over RCW 87.03.645–.695 because the former is the more specific expression of legislative intent. There is no taking and no impairment of contract.